Steven A. Fabbro, SBN 107973
fabbrolaw2001@yahoo.com
LAW OFFICES OF STEVEN A. FABBRO
601 Montgomery Street, Suite 688
San Francisco, California 94111
Tel: (415) 391-6850/Fax (415) 391-6856

Attorney for Plaintiff  DAVID ROBERT
SEEVER, Individually and as  Co-Successor in
Interest to TREVOR R. SEEVER

Robert P. Fores, SBN 119235
rfores@foresmacko.com
FORES - MACKO - JOHNSTON, INC.
1600 "G" Street, Suite 103
Modesto, California 95354
Tel: (209) 527-9899/Fax: (209) 527-2889

Ronald La Force, SBN 32927
ronaldlouislaforce@gmail.com
LAW OFFICES OF RONALD LA FORCE
1120 Scenic Avenue
Modesto, California 95355
Tel: (209) 602-5711/Fax: (209) 575-4356

John Burton, SBN 86029
jb@johnburtonlaw.com
THE LAW OFFICES OF JOHN BURTON
128 North Fair Oaks Avenue
Pasadena, California 91103
Tel: (626) 449-8300/Fax: (626) 440-5968

Attorneys for Plaintiff DARLENE RUIZ,
Individually and as Co-Successor-in-Interest to
TREVOR R. SEEVER, Deceased

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ROBERT SEEVER, Individually and as Co-Successor in Interest to TREVOR R. SEEVER, Deceased, and DARLENE RUIZ individually and as Co-Successor in Interest to TREVOR R. SEEVER, Deceased, <br><br> Plaintiffs, <br> vs. <br><br> CITY OF MODESTO, MODESTO POLICE DEPARTMENT, JOSEPH LAMANTIA, and Does 1-10, inclusive, <br><br> Defendants. | Lead Case No.: 1:21-cv-01373-JLT-EPG <br> Member Case No.: 1:21-cv-01565-JLT-EPG <br><br> **CONSOLIDATED FIRST AMENDED COMPLAINT FOR DAMAGES** <br><br> 1. Fourth Amendment  – Excessive Force (42 U.S.C. § 1983) <br> 2. Violations of Plaintiff's Right to Familial Relationship (42 U.S.C. § 1983) <br> 3. Municipal Liability – Failure to Train and Supervise  (42 U.S.C. § 1983) |

Consolidated First Amended Complaint For Damages For Violation Of Civil Rights And Wrongful Death

1

4. Municipal Liability –
   Unconstitutional Custom, Practice,
   or Policy (42 U.S.C. § 1983)
5. Wrongful Death
6. Bane Act (Cal. Civ. Code § 52.1)
7. Assault and Battery
8. Intentional Infliction of Emotional
   Distress (Plaintiff Ruiz only)

COMES NOW, Plaintiff DAVID ROBERT SEEVER, individually and a co-successor-in-interest to TREVOR R. SEEVER, and Plaintiff DARLENE RUIZ, individually and a co-successor in interest to TREVOR R. SEEVER, for their Consolidated First Amended Complaint against Defendants and allege as follows:

**INTRODUCTION**

1.      This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the fatal shooting of Plaintiffs' son, Trevor R. Seever, age 29, on December 29, 2020, by Defendant Joseph Lamantia ("Lamantia"), then employed as a police officer by Defendants City of Modesto ("City") and Modesto Police Department ("MPD").  Although Trevor was not armed and never acted as if he were posing an immediate threat,  Lamantia fired three shots as Trevor fled, one, not fatal, striking him in the back.  After Trevor collapsed to his knees and turned to face Lamantia with his hands raised in surrender, Lamantia fired three more rounds, two of which struck Trevor – one in the liver and one in the heart, inflicting fatal wounds leading to Trevor's death. Lamantia's shooting and killing of Trevor Seever was brutal, malicious, and done without just provocation or cause.

2.      The City and MPD were well aware of Defendant Lamantia's propensity for violence, as he was involved in multiple other deadly shootings, in custody deaths and uses of excessive force

during his twelve years  as an MPD officer. Defendants City and MPD and MPD's former Police Chief Galen Carroll, knew of Lamantia's repeated use of excessive force. Plaintiffs are informed and believe that Defendants City and MPD failed to properly discipline, re-train or otherwise remediate Lamantia regarding the reasonable use of force, including lethal force, prior to his killing of Trevor, and this conduct and deliberate indifference was a proximate cause of Trevor's death.

## JURISDICTION AND VENUE

3.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, as well as the laws and Constitution of the State of California. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), and the aforementioned statutory and constitutional provisions. Plaintiffs further invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367 to hear and decide claims arising under state law that involve the same case and controversy .

4.      This Court has jurisdiction under to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) because Plaintiff asserts claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

5.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## PARTIES

6.      At the time of his death, Trevor Seever was an individual residing in the City of Modesto, California.

Consolidated First Amended Complaint For Damages For Violation Of Civil Rights And Wrongful Death

3

7.     Plaintiff David Robert Seever is an individual residing in the State of Oklahoma and is the father of Trevor Seever.  Plaintiff David Robert Seever sues both in his individual capacity and in a representative capacity as a co-successor in interest to Trevor Seever pursuant to California Code of Civil Procedure § 377.60.   Plaintiff Darlene Ruiz is an individual residing in the State of California and is the mother of Trevor Seever.   Plaintiff Darlene Ruiz sues both in her individual capacity and in a representative capacity as a co-successor in interest to Trevor Seever pursuant to California Code of Civil Procedure § 377.60.

8.     Defendant City is a municipal corporation existing under the laws of the State of California. The City is a chartered subdivision of the State of California with the capacity to be sued. The City is responsible for the actions, omissions, policies, procedures, practices, and customs of its various departments, agents and agencies, including the MPD and its officers and employees. The City is responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the MPD and its employees and agents comply with the laws of the United States and of the State of California. Defendant MPD is an independent entity subject to suit, as recognized by binding Ninth Circuit precedent. During most of the relevant time period Galen Carroll was the MPD Chief of Police and therefore the final decision maker responsible for to the supervision, training and discipline of MPD officers. and development of constitutional policing policies and practices. Plaintiffs contend City and MPD decisionmakers, including but not limited to Chief Carroll, were personally on actual and constructive notice of the unconstitutional deficiencies in City and MPD policies, practices, procedures and training regarding the discipline, training and retention of officers, and the use of force and the reasonable continuing use of available less-lethal alternatives that would render lethal force unreasonable, but with deliberate indifference failed to correct its unconstitutional deficiencies.

9.      Defendant Lamantia was for the 12 years preceding the shooting an MPD police officer. He was subsequently terminated. Lamantia was acting under color of law and within the course and scope of his duties as an MPD officer at all relevant times.  Defendant Lamantia used excessive force when he shot Trevor Seever multiple times and killed him.

10.      Plaintiffs are ignorant of the true names and/or capacities of defendants sued herein as Does 1 through 10, inclusive, and therefore sue said defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs believe and allege that each of the DOE defendants is legally responsible and liable for the incident, injuries and damages hereinafter set forth. Plaintiffs will ask leave to amend this complaint subject to further discovery.

11.      Defendants Does 1-5 are police officers for the MPD and were acting under color of law within the course and scope of their duties as officers for the MPD at all relevant times.

12.      Defendants Does 6-10 are managerial, supervisorial, and policymaking employees of the MPD and/or the City, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the MPD and/or the City. Does 6-10 were acting with the complete authority and ratification of their principals, Defendants City of Modesto and MPD.

13.      In doing the acts alleged herein, Defendants, and each of them acted within the course and scope of their employment for the City of Modesto and MPD.

14.      In doing the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under color of state law.

15.      All of the acts complained of by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity, and acting as the authorized representatives,

employees and/or agents of each other, and whose acts were known to, authorized by, and/or ratified by each of the remaining Defendants.

16.     Defendants acted in concert, within the scope of their employment, and under color of state law. Each had the opportunity to intervene to prevent others from depriving Plaintiffs and Decedent of their constitutional rights and failed to do so.

17.     Plaintiffs timely and properly filed government tort claims pursuant to California Government Code § 910 *et seq.*, and this action is timely filed within all applicable statutes of limitation.

## STATEMENT OF FACTS

18.     Trevor Seever lived most of his life in Modesto. At the time of his death, he was living in Modesto with his mother Darlene, stepfather Ray Ruiz, and sister Allison.

19.     On the morning of December 29, 2020, Trevor inexplicably became manic and irrational. He left home and texted family members messages that made little sense. He was angry with his mother. Trevor had no history of guns or violence, but falsely texted that he purchased a firearm. Trevor called his mother. He said "I'm coming over, and you guys need to leave the house and call 911." Darlene told her daughter Allison, Trevor's sister, to call 911. Allison called the MPD at approximately 11:20 a.m. and reported what happened.

20.     At approximately 11:37 a.m. Lamantia advised dispatch that he had arrived at a church on Rosemore and Woodland where he was told Trevor might be heading.  He was told that according to Allison, Trevor was possibly enroute to the Church of the Brethren located nearby at 2301 Woodland Avenue.  Lamantia was the first officer to arrive at the Church of the Brethren looking for Trevor Seever. Other MPD officers were in route and not far behind.

21.     Lamantia's body camera was operating when he exited his car at the Church and what occurred at the Church was recorded on that camera, which can be viewed at

https://www.youtube.com/watch?v=ixkCfp4XL60 (the MPD released the video on January 13, 2021). Its contents are incorporated into this First Amended Complaint by reference.

22.     As can be seen on the video, Lamantia exited his vehicle with his pistol drawn, ran around the corner of a building to an open lawn. Trevor was running away, unarmed, and with his back turned to Lamantia, who twice yelled, "Get on the ground." Approximately two seconds after Lamantia rounded the building's corner, he fired his first volley, four shots within approximately two seconds, and without warning or waiting for compliance with his command.

23.     Officer Lamantia, still pointing his firearm, ran closer to Trevor and yelled "Show me your hands" and "Put your hands up." Trevor was kneeling on the ground, facing Lamantia with his hands up, screaming in pain. The screen shot of the video below shows Trevor unarmed, with his hands raised and complying with Lamantia's command.



24.    Approximately twenty seconds after the last shot of the first volley, Lamantia fired three shots in a second volley.  At that point, Lamantia reloaded his weapon, in what he later told investigators was a "tactical" reload.

25.    After the second volley Trevor can be heard moaning in pain and at one point crying out "I can't breathe" after being hit by this second volley. He then dropped to the ground. The screen shot of the video below shows him lying there with the two fatal gunshot wounds inflicted by Lamantia after Trevor surrendered with hands up, on his knees, facing the officer:



26.    Trevor was transported while struggling for life. Plaintiff Ruiz saw him loaded into the ambulance, obviously still alive, and was assured by MPD officers at scene that "he'll be ok." Due to loss of blood from the two front wounds, however, Trevor exsanguinated and was pronounced dead in the emergency room at 12:12 p.m. According to the medical examiner's autopsy report, Trevor was struck by three bullets – a gunshot wound to the back, travelling back to front penetrating the right 11th intercostal space, mesentery, and intestine. a gunshot wound to his chest, travelling front to back penetrating the left 7th rib, apex of the heart, left lung, left 8th intercostal space; and a gunshot wound to his abdomen, travelling front to back penetrating the right 9th rib, right lung, liver, and mesentery.   According to the Coroner, the cause of death was "blood loss due

to multiple gunshot wounds to the back, chest, and abdomen." Trevor would have survived the shot to the back, however, which he sustained while running away. The lethal shots were the two to the front after he surrendered.

27.     On December 29, 2020, Lamantia drew his firearm before attempting to determine whether Trevor had a weapon, which he did not. Lamantia's first response after contacting Trevor was to use deadly force by firing several rounds without first attempting to follow Trevor at a safe distance. Lamantia made no attempt to subdue Trevor by non-lethal means. He did not wait for back up. Lamantia fired without encountering any risk of serious bodily injury or deadly force exhibited by Trevor.  At no time did Lamantia warn Trevor that lethal force would be used.  Trevor was unarmed and did not pose an imminent threat of death or serious bodily injury to Lamantia or to anyone else when he was shot.

28.     Lamantia's shooting of Trevor Seever violated AB 392 (effective January 1, 2020), which amended California Penal Code § 835a  and clearly specifies that a law enforcement officer may use deadly force only when the officer reasonably believes, based on the totality of the circumstances, that such force is *necessary*, either to defend against an imminent threat of death or serious bodily injury to the officer or another person, or to apprehend a fleeing person for a felony that threatened or resulted in death or seriously bodily injury. None of that applied here.

29.     Lamantia's shooting of Trevor Seever violated the Fourth Amendment and constitutional threshold of *Tennessee v. Garner*, which allows deadly force only "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others," such as where "the suspect threatens [an] officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm," and "where feasible, some warning has been given."

30.     Defendant Lamantia was a twelve-year veteran of the MPD when he shot and killed Trevor Seever on December 29, 2020.  During that time, Lamantia had been involved in at least five other police shootings, including four where the victim died:

- In a 2010 incident, a 45-year-old man was shot and killed when officers, including Lamantia, were called to the scene after it was reported that Francisco Moran was intoxicated, belligerent and armed with a knife. He was armed with a metal spatula.

- In a 2016 incident, Lamantia was one of the officers involved in the fatal shooting of a suspect in Turlock.

- In another 2016 shooting, a woman, Kim Jackson, who police officers said charged them with knives, was shot and killed by officers, including Lamantia. As described more fully below, this incident is currently being litigated in *Estate of Jackson v. City of Modesto, et al.*,  E.D Case No. 1:21-CV-0415 AWI EPG.

- In a third 2016 incident, Lamantia was involved in the arrest of a man who subdued with less-lethal shotgun rounds and a Taser. The man died a few days later. As described more fully below, the City of Modesto, Chief Carroll, and Joseph Lamantia were sued for civil rights violations alleging excessive force in *Schmidt v. City of Modesto, et al.*, E.D. Cal. Case No. 1:17-cv-01411-DAD-MJS.  As discussed below, that civil rights case resulted in a settlement paid by the City of Modesto along with an order for attorneys' fees against the City.

- Finally, in an October 2020, two months before Trevor Seever was shot, Lamantia was involved in a nonfatal officer-involved shooting of David Cummings in Stockton.

31.     As a direct and proximate result of each Defendants' acts and/or omissions as set forth in this complaint, Plaintiffs sustained the following injuries and damages, past and future,

including but not limited to: wrongful death of Trevor Seever; loss of familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and financial and moral support (wrongful death and loss of familial association); pain and suffering, including emotional distress  based on individual § 1983 claims for loss of familial association); hospital and medical expenses (survival claims); funeral and burial expenses (survival claims); Trevor Seever's loss of life and loss of enjoyment of life, pursuant to federal civil rights law (survival claims); Trevor Seever's pain and suffering, pursuant to federal civil rights law (survival claims); violations of constitutional rights; and all other damages, penalties, and attorneys' fees and costs recoverable under 42 U.S.C. §§ 1983 and 1988, and California Civil Code §§ 52 and 52.1, and as otherwise allowed under California and United States statutes, codes, and common law.

**FIRST CLAIM FOR RELIEF**
**(Fourth Amendment - Excessive Force — 42 U.S.C. Section 1983)**
**(Plaintiffs as Successors in Interest to Trevor Seever**
**Against Defendants Lamantia and Does 1-5)**

32.      Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 31 of this First Amended Complaint with the same force and effect as if fully set forth herein.

33.      Defendant Lamantia, acting under the color of law as a police officer, used excessive force against Trevor Seever. Both volleys of shots fired at Trevor were excessive and unreasonable, especially because Trevor posed no immediate threat of death or serious bodily injury to Lamantia or anyone else at the time of the incident. The second volley took place after Trevor had been shot in the back and was on his knees with his hands raised, clearly surrendering.

34.      Defendant Lamantia's unjustified shooting deprived Trevor Seever of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment, and made actionable by § 1983.

35.     As a direct and proximate result of the acts and omissions set forth above, Trevor Seever sustained injuries and damages as alleged above, including but not limited to physical pain, suffering and emotional distress up to the time of his death, and then loss of enjoyment of life, and loss of life thereafter.

36.     Defendant Lamantia's conduct was willful, wanton, malicious, and done with conscious and reckless disregard for the rights and safety of Trevor Seever, and therefore warrants the imposition of exemplary and punitive damages against him.

**SECOND CLAIM FOR RELIEF**
**Violations of Plaintiffs' Rights to Familial Relationship (42 U.S.C. § 1983)**
**(Plaintiffs Individually as against Lamantia and Does 1-5)**

37.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 36 of this First Amended Complaint with the same force and effect as if fully set forth herein.

38.     Plaintiffs have cognizable interests under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprived their son of life in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiffs' familial relationship with their son, Trevor.

39.     Trevor Seever had had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience.

40.     Defendant Lamantia's shooting of Trevor Seever in the back without warning as he was fleeing and not posing a threat to anyone, and then twenty seconds later shooting him twice in the chest after he was wounded, on his knees with his hands raised in surrender, shocks the conscience. Defendant Lamantia acted with deliberate indifference to the constitutional rights of Trevor Seever and Plaintiffs, and with a purpose to harm unrelated to any legitimate law enforcement objective. Specifically, the following, actions, individually and collectively, shock the

Consolidated First Amended Complaint For Damages For Violation Of Civil Rights And Wrongful Death

conscience:

• shooting a fleeing person in the back without warning

• shooting a person who has surrendered and is on his knees with hands raised;

• shooting a person who is unarmed;

• shooting a person who was not suspected of having recently committed a crime involving the infliction or threatened infliction of serious physical harm;

• shooting a person who was not threatening the shooting officer; and

• shooting a person who was not posing an immediate threat to anyone else.

41.    As a direct and proximate result of these actions, Defendants violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with their familial relationship with their son Trevor Seever, and Plaintiffs suffered injuries and damages including physical pain, suffering and emotional distress, mental anguish, and the deprivation of the life-long love, companionship, comfort, support, society, care, and sustenance of their son, and will continue to be so deprived for the remainder of their lives.

42.    The conduct of Defendant Lamantia and Does 1-5 were willful, wanton, malicious, and done with conscious and reckless disregard for the rights and safety of with their son Trevor Seever and Plaintiffs, and therefore warrants the imposition of exemplary and punitive damages.

**THIRD CLAIM FOR RELIEF**
**Municipal Liability – Failure to Train and Supervise (42 U.S.C. § 1983)**
**(Plaintiffs Individually and as Successor in Interest to Trevor Seever**
**Against Defendants City, MPD and Does 6-10)**

43.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 42 of this First Amended Complaint with the same force and effect as if fully set forth herein.

44.    Defendants Lamantia and Does 1-5 deprived Trevor Seever of his rights under the United States Constitution as alleged above.  The training and supervision of Defendants Lamantia

Consolidated First Amended Complaint For Damages For Violation Of Civil Rights And Wrongful Death

and Does 1-5 by Defendants City and MPD were inadequate to train officers handle the usual and recurring situations with which they must deal in a safe and lawful manner.

45.     Defendants' failures included, but are not limited to, training and supervising officers that reasonable alternative non-lethal tactics should be used to control subjects who do not appear to pose an imminent threat of serious injury or harm; and that where reasonable opportunities for de-escalation of potentially threatening subjects exist, that officers should use effective communication that is not confrontational, escalating, or demanding; reasonably creating time and distance to help de-escalate, to allow the use of effective communication, and to allow the continuing opportunity to use  non-lethal tactics, which  must be employed to defuse a potential threat in place of lethal force under all circumstances other than those rare occasions, no present here, where deadly force is *necessary* to prevent the infliction of imminent death or great bodily injury by the person shot.

46.     Defendants' failures to train and supervise MPD officers are shown in the multiple incidents of misconduct and excessive force alleged herein.  *See e.g.,* Paragraphs 30, *supra* and Paragraphs 54 and 55, *infra.*

47.     Before Defendant Lamantia's shooting of Trevor Seever on December 29, 2021, the City and its decision makers and the entire MPD command staff and chain of command, up to and including Chief Carroll, knew that Lamantia had a propensity for violence that made him unsuitable for police work. These entity Defendants and their managers did not take the necessary steps to prevent the unnecessary shooting of individuals. Defendants City, MPD and Does 6-10 have not taken the necessary steps to prevent Lamantia and other MPD officers from using inappropriate tactics, including excessive force and unnecessary deadly force, during encounters with individuals. They knew about Defendant Lamantia's violent tendencies, as he was directly involved in at least four prior fatal shootings as well as an in-custody death; an extraordinary record for a California police officer.

48.     Defendants City of Modesto, MPD, and Does 6-10 were deliberately indifferent to the obvious consequences of their failure to train and supervise officers adequately, including Lamantia. The failure of Defendants City, MPD and Does 6-10 to provide adequate training and supervision caused the deprivation of Trevor Seever's rights alleged above. The failure to train and supervise was so closely related to the deprivation as to be the moving force causing the ultimate injuries.

49.     Had Lamantia been adequately trained and supervised, he would have known not to shoot someone in the back, especially without a warning, who was running away unarmed, and not to shoot someone who was surrendering. Instead, he would have known that he had to use other tactics, such as coordinating with the many other MPD officers who were then responding to set up a perimeter and contain Trevor, or just to follow him.

50.     Had Defendants City, MPD and Does 6-10 properly trained and supervised their officers, Lamantia would have been deterred from firing out of concern that his unconstitutional use of deadly force would have severe consequences on his conditions of employment and expose him to criminal prosecution. To the contrary, Lamantia shot Trevor Seever in the back with impunity, and then again while he was surrendering, believing that Defendants City, MPD and Does 6-10 were more concerned with maintaining good relations with other officers than with discharging their constitutional obligations to protect the public from miscreant and violent officers.

51.     As a direct and proximate result of the acts and omissions of the acts or omissions set forth above, Trevor Seever and Plaintiffs sustained injuries and damages as alleged above, including but not limited to Trevor's physical pain, suffering and emotional distress up to the time of his death, loss of enjoyment of life, and loss of life, Plaintiffs' wrongful death damages, and Plaintiffs emotional distress at the death of their son.

**FOURTH CLAIM FOR RELIEF**
**Municipal Liability – Unconstitutional Custom, Practice, or Policy**
**(42 U.S.C. § 1983)**
**(Plaintiffs Individually and as Successors in Interest to Trevor Seever**
**Against Defendants City, MPD Carroll, and Does 6-10)**

52.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 51 of this First Amended Complaint with the same force and effect as if fully set forth herein.

53.     Defendants Lamantia and Does 1-5 deprived Trevor Seever of his rights under the United States Constitution as alleged above.

54.     Former Chief Galen Carroll was a final policy-making authority for the Modesto Police Department, for at least seven years prior to the shooting. *See* Cal. Gov. Code § 38630(a); Modesto Municipal Code § 2-3.902; Modesto Police Department Policy Manual, Policy 106.3 ("Policy Manual") and Policy 200.3 ("Organizational Structure and Responsibility") (https://www.modestogov.com/2503/Policy-Manual-and-Training-Materials).

55.     The unconstitutional actions and/or omissions of Lamantia, and DOES 1-5, were pursuant to the following customs, practices, and/or policies which were directed, encouraged, allowed, and/or ratified by policy making officials for City and the MPD:

(a)     Using or tolerating the use of excessive force, including but not limited to using or tolerating excessive unlawful deadly force including permitting and affirmatively training officers (i) to use deadly force when faced with less than an immediate threat of death or serious bodily injury; (ii) to use deadly force prematurely, or as a "first resort," or when facing a mere potential threat; and (iii) to use deadly force without giving a proper warning when one would be feasible;

(b)     Allowing police officers who had demonstrated a pattern of using

16

unreasonable force, such as Lamantia and his history of officer-involved-shootings, to continue on patrol, posing a danger to the public of continuing to use excessive force without remediation, retraining, or discipline;

(c)     Covering up or tolerating violations of constitutional rights, including but not limited by any or all of the following:

    i.     Failing to properly investigate and/or evaluate complaints or incidents of excessive and unreasonable force, officer-involved shootings, law enforcement related deaths, and unlawful seizures;

    ii.     Failing to promptly, independently, thoroughly, and properly investigate and address officer involved shootings and other law enforcement related deaths;

    iii.     Ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful police activity; and

    iv.     Finding that excessive force is "within policy; and

    v.     Encouraging, accommodating, or facilitating a "code of silence," under which officers do not report each other's errors, misconduct, or crimes

(d)     Using or tolerating inadequate, deficient, and improper procedures for handling, investigating, and reviewing complaints of officer misconduct;

(e)     Failing to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this First Amended Complaint and in subparagraphs (a) through (d) above, with deliberate indifference to the rights and safety of Trevor Seever and the public, and in the face of an

obvious need for such policies, procedures, and training programs to prevent recurring and foreseeable violations of rights of the type described herein;

(f)     Failing to train officers that reasonable available non-lethal tactics must be used against people who do not pose an imminent threat of serious injury or harm; and

(g)     Failing to train officers that where reasonable opportunities for de-escalation of potentially threatening individuals exist, that the use of effective communication that is not confrontational, escalating, or demanding; reasonably creating time and distance to help de-escalate, to allow the use of effective communication, and to allow the continuing opportunity to use non-lethal tactics, which must be employed to defuse a potential threat in place of lethal force.

56.     Defendants City of Modesto and MPD policy makers and managers, including former Chief Carroll, knew of the deficient customs, practices, and/or policies alleged above. Despite having that knowledge, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Defendants thus acted with deliberate indifference to the foreseeable effects and consequences of their policies, practices, and customs with respect to the constitutional rights of Trevor Seever and others similarly situated.

57.     Defendants City of Modesto and MPD maintained, promulgated and tolerated unconstitutional customs, practices, and/or policies, as further demonstrated by various incidents involving police officers' uses of unreasonable and excessive force, including the following lawsuits resulting in settlements or verdict against the City:

(a)     *Schmidt v. City of Modesto, et al.*, E.D. Cal. Case No. 1:17-cv-01411-DAD-MJS:  alleging that on October 24, 2016, several MPD police officers, including Lamantia,

were involved in an incident where tasers and less-lethal shotgun rounds were used to subdue Garrett Schmidt, a mentally ill man who had broken into and barricaded himself within a residence. One officer (Alex Bettis) fired a shotgun with less-lethal rounds at Schmidt, who was lying on ground. Schmidt died after the arrest.  A civil rights lawsuit was filed. Lamantia and former Chief Carroll were named defendants. The Schmidt killing is one of the deadly shootings alleged above.  The case settled with the City paying $75,001.  The City was also ordered to pay $27,676.25 in attorneys' fees. *See Schmidt v. City of Modesto*, 2018 WL 6593362 (E.D. Cal. Dec. 14, 2018).

(b)   *Mugrauer v. City of Modesto, et al*.,  E.D. Cal. Case No. 1:16-cv-00480-AWI-SAB: alleging that on January 12, 2015, MPD officers John Lee and Randy Raduechel forcibly entered a home, without a warrant, and over the protest of its occupants. Officer Lee pushed 67-year-old Patricia Mugrauer to the ground, causing her to fracture her left hip. A civil rights lawsuit was filed. Chief Carroll was a named defendant in the case. A judgment for the plaintiff for $745,651.01 was entered before trial. *See Mugrauer v. City of Modesto*, 2017 U.S. Dist. LEXIS 7719 (January 19, 2017).  The City paid an additional 60,000.01 to Ms. Mugrauer's son who was present when the incident occurred. https://www.modbee.com/news/article146527469.html ("Modesto pays $60,000 more in lawsuit, bringing total to $805,000").

(c)   *Smith v. City of Modesto, et al*., E.D. Cal. Case No. 1:14-cv-01285-LJO-MJS: alleging that on January 12, 2013, MPD officers Randy Bolinger and Dave Watson confronted and assaulted Jack Smith, including by punching him in the back of the head and six times in the face, fracturing facial bones and his jaw. A civil rights lawsuit was filed, which was settled with the City of Modesto paying $165,000 before trial. https://www.modbee.com/article45116196.html ("Modesto pays $165,000 to settle

excessive-force claim").

(d)     *Letona v. City of Modesto, et al*., E.D. Cal. Case No. 1:12-cv-00782-AWI-SAB:  alleging on April 5, 2011, MPD officers Daniel Key, Brian Ferguson, Benjamin Kroutil, Jonathan Griffith, and Ben Brandvold entered the home of Rosa Letona, Natalie Letona, and Rosemary Banuelos. The officers had no warrant and pointed firearms at occupants and threatened to shoot the family dog in an effort to pressure one of the occupants to consent to her vehicle being repossessed and towed from the home. A civil rights lawsuit was filed, which was settled with the City of Modesto paying $120,000 before trial.

(e)     *Reed v. City of Modesto, et al*., E.D. Cal. Case No. 1:11-cv-01083-AWI-GSA: alleging that on December 30, 2010, MPD police  officers Ronald Ziya and Caeli Koehler responded to a residence to conduct a welfare check on Brian Reed, a reportedly suicidal man who held a three-inch blade pocketknife to his own chest. The officers advanced towards Reed, shouting commands and forcing a  confrontation as Reed tried to move away from the officers. Officer Ziya shot Reed multiple times, permanently disabling him and allegedly causing him to sustain cognitive deficits. The case settled in 2016 with the City paying Reed $850,000.  https://www.modbee.com/article92282232.html ("Modesto to pay $850.000 to settle police lawsuit") (July 27, 2016).

(f)     *Mordoff v. City of Modesto, et al*., E.D. Cal. Case No. 1:11-cv-01039-AWI-SAB:  alleging that on May 28, 2010, MPD police  detective James Rokaitis pistol-whipped and shot three times Joshua Mordoff, an unarmed and nonthreatening  "peeping tom" suspect. A civil rights lawsuit was filed which was settled with the City paying $150,000 before trial.  https://www.modbee.com/latest-news/article3159110.html  ("Suspected peeping Tom gets $150,000 after being shot by Modesto police").

(g)     *Olvera v. City of Modesto, et al*., E.D. Cal. Case 1:11-cv-00540-AWI-GSA: alleging that on December 4, 2009, MPD Officer Mark Ulrich sent his police canine into an abandoned building, where it mauled Armando Olvera, a sleeping occupant in the building, severely injuring him. A civil rights lawsuit was filed. *See Olvera v. City of Modesto*, 38 F.Supp.3d 1162 (E.D. Cal. 2014) (denying motion for summary judgment on excessive force claims). Defendant City of Modesto settled the case for $105,000 before trial.

(h)     *Rodriguez v. City of Modesto, et al*., E.D. Cal. Case No. 1:10-cv-01370-LJO-MJSL: alleging that on February 8, 2009, MPD  officers responded to a noise complaint at a residence. The officers attacked and arrested several of the occupants, allegedly utilizing excessive force, including a Taser and police dog. A civil rights lawsuit was filed. The case settled in 2015 for $165,000. https://www.govinfo.gov/content/pkg/USCOURTS-caed-1_10-cv-01370/pdf/USCOURTS-caed-1_10-cv-01370-11.pdf**.**

(i)     *Fisher v. City of Modesto, et al*.,  E.D. Cal. Case No. 1:10-cv-01029-OWW-JLT:   On June 4, 2009, MPD officer Horacio Ruiz forcefully twisted the wrist of a handcuffed minor, Randi Fisher, breaking her wrist. A civil rights lawsuit was filed. Plaintiffs are informed and believe that Defendant City of Modesto settled the case for $495,000 before trial. https://www.modbee.com/article92282232.html.

Plaintiffs allege on information and belief that despite the development of evidence substantiating significant misconduct and brutality in each of these cases, including the identification of multiple MPD officers who witnessed wrongful conduct by their colleagues and failed to intervene or report it, virtually no disciplinary action was taken against any of the offending officers, and their opportunities for continued employment, and even promotions were not affected. As a result, the MPD developed de facto and well understood policies and practices that excessive force, up to and including unnecessary deadly force, could be used with impunity and without concern that any

disciplinary action or other employment consequence would follow. Lamantia's brazen shooting of Trevor Seever was the logical and inevitable result of such practices.

58.     Plaintiffs are informed and believe Defendants City's and MPD's customs, practices, and/or policies are further demonstrated by other incidents involving the use of unreasonable and excessive force by MPD officers, which have resulted in pending litigation:

(a)     *Estate of Jackson v. City of Modesto, et al*., E.D Case No. 1:21-CV-0415 AWI EPG (filed March 2021):  Alleging that on October 8, 2016, Lamantia and two other officers responded to a 911 call that Kim Jackson had been drinking, had threatened suicide and was armed with a knife. Lamantia was armed with a pistol, another officer was armed with a shotgun, and a third officer was armed with a Taser.  The officers walked toward the residence with their weapons unholstered and displayed. This show of force by the officers exacerbated Jackson's mental illness and generated fear and anxiety that the officers intended to harm her. Jackson approached the officers in the street, and she had multi-colored kitchen knives in her hands. The officers "triangulated" Jackson's position, which exacerbated the effects of Jackson's mental illness and increased her fear and anxiety. As Jackson walked toward Lamantia, he and Officer Callahan discharged their weapons. Lamantia's bullet struck Jackson in the chest from a distance of 11 or 12 feet, while Callahan's Taser probe struck Jackson's left wrist from a distance of 17 feet. Jackson then dropped all of the knives that she had in her hand. Jackson turned away from the officers and began to stagger away. Jackson posed no threat to the officers or to anyone else after she turned and began staggering away. While Jackson was staggering away from the officers, Bettis discharged his shotgun twice from a distance of 22 feet. One of the rounds may have been a less-lethal, so-called "bean bag" round, but the other round penetrated Jackson's rib, left kidney, left adrenal, aorta, intestines, and stomach before finally lodging into her liver. Lamantia also fired a second

Consolidated First Amended Complaint For Damages For Violation Of Civil Rights And Wrongful Death

bullet at Jackson as she staggered away. The bullet grazed Jackson's right forearm from a distance of 17 feet. Bettis and Lamantia both discharged their second rounds at the same time.  Kim Jackson died at the hospital. The case is currently pending.

(b)     *Perkins v. City of Modesto, et al.*, No. 119CV00126LJOEPG, (E.D. Cal. Mar. 23, 2020): alleging that on November 6, 2017, plaintiff Perkins drove his significant other, to the bank, and waited in his vehicle, sitting in the driver's seat, in the bank's parking lot while she entered the bank. Defendants Jerry J. Ramar and Ryan Olson, on-duty MPD officers, approached Perkins' vehicle. Perkins was not aware that these officers had approached his vehicle. Defendant Ramar unholstered and fired his MPD-issued firearm at Perkins without warning and without provocation, shooting at Perkins and his vehicle. Ramar shot at Perkins approximately six times, including in the face, chest, left arm, and left shoulder. Defendant Ryan Olson stood by as Ramar shot Perkins, without protesting or intervening, despite the opportunity to do so. The case is still pending.

(c)     *Montelongo v. City of Modesto, et al.*,  E.D. Cal. Case No. 1:15-cv-01605-TLN-BAM (filed in October 2015).  According  to a June 2021 order denying a motion for summary judgment, on October 17, 2014, MPD officer David Wallace arrived at a residence to conduct a welfare check, after a 9-1-1 call was received. Jesse Montelongo answered the door. Officer Wallace pointed his firearm and demanded that Montelongo show his hand. Montelongo tossed a book and began to close the door. Officer Wallace turned away as the book was tossed in his direction, then turned back towards Montelongo and fired a bullet into his chest as the door shut. The Court noted that rather shooting Montelongo as he was retreating a reasonable jury could consider other methods available to Officer Wallace to subdue him.  The case remains pending.  See *Montelongo v. City of Modesto*, 2021 U.S. Dist. LEXIS 112260 June 14, 2021).

59.     Defendants City of Modesto and MPD, through policy makers and managers Does 6-10, were responsible for creating, approving, and enforcing the unconstitutional policies, customs, and/or practices described in paragraph 55.  The aforementioned entities and individuals acted with deliberate indifference to the foreseeable effects and consequences of the policies, customs, and/or practices with respect to the constitutional rights of Trevor Seever and other individuals similarly situated.

60.     The unconstitutional policies, customs, and/or practices described in Paragraph 55 and the prior supervisory failures and deliberate indifference of said Defendants were a proximate cause of and moving force behind the violations of Plaintiffs and Trevor Seever's clearly established and well-settled rights in violation of 42 U.S.C. § 1983 as alleged above.

61.     As a direct and proximate result of the acts and omissions set forth above, Trevor Seever sustained injuries and damages as alleged above, including but not limited to physical pain, suffering and emotional distress up to the time of his death, loss of enjoyment of life, and loss of life as well as penalties, costs and attorneys' fees as set forth in above.

### FIFTH CLAIM FOR RELIEF
### (Wrongful Death)
### Against Defendants City, MPD. Lamantia and Does 1-10)

62.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 61 of this First Amended Complaint with the same force and effect as if fully set forth herein.

63.     Defendant Lamantia and Does 1-5, while working as MPD officers acting within the course and scope of their duties, shot Trevor Seever who died from his injuries.

64.     At all times Defendants Lamantia and Does 1-5 had a duty to act with due care in the execution and enforcement of any right, law, or legal obligation. That duty includes, but is not limited to, using reasonable care to prevent harm or injury to others while using appropriate law enforcement tactics, giving appropriate commands, giving warnings, and not using any force unless

Consolidated First Amended Complaint For Damages For Violation Of Civil Rights And Wrongful Death

24

necessary, using less than lethal options, and only using deadly force as a last resort.  Additionally, the general duties of reasonable care and due care by Does 6-10 include but are not limited to the following:

65.    To properly and adequately hire, investigate, train, supervise, monitor, evaluate, and discipline their employees, agents, and/or law enforcement officers to ensure that those employees/agents/officers act at all times in the public interest and in conformance with law;

66.    To make, enforce, and at all times act in conformance with policies and customs that are lawful and protective of individual rights, including those of Plaintiffs and Trevor, and to refrain from making, enforcing, and/or tolerating the wrongful policies and customs listed above.

67.    Defendants Lamantia and Does 1-10 through their actions and omissions breached their duties of care and wrongfully caused the death of Trevor Seever.

68.    Defendant City is vicariously liable for the wrongful acts of its employees and agents including Defendant Lamantia  and Does 1-10 under California Government Code section 815.2(a).

69.    Trevor Seever died as a direct and proximate result of Defendants' wrongful and negligence acts and omissions and as a direct and proximate result Plaintiffs Robert Seever and Darlene Ruiz sustained injuries and damages arising from their son's wrongful death, including, but not limited to, being deprived of the life-long love, companionship, comfort, support, society, care and sustenance of their son, and will continue to be so deprived for the remainder of their lives.

**SIXTH CLAIM FOR RELIEF**
**Violation of California Civil Code § 52.1 ("the Bane Act")**
**(Plaintiffs as Successors in Interest to Trevor Seever**
**Against Defendants City, Lamantia and Does 1-10)**

70.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 69 of this First Amended Complaint.

71.    The actions of Defendants Lamantia and Does 1-10 interfered through violence,

threats, intimidation and coercion with Trevor Seever's exercise of rights guaranteed by the constitutions and laws of the United States and the State of California, including but not limited to the Fourth Amendment, the Fourteenth Amendment, the protection of Cal. Civ. Code § 43 from bodily harm, the newly enacted AB 392, which amended Cal. Penal Code § 835a, and protects all people within California from being subjected to unnecessary deadly force by law enforcement officers, as well as Art. I §13 of the California Constitution. This list is illustrative and no exhaustive.

72.     The aforementioned Defendants intentionally committed these acts to threaten, intimidate, coerce discourage and retaliate against Trevor Seever, who was exercising his constitutional right to be free from illegal seizure, and with reckless disregard for and deliberate indifference to Trevor Seever's federal and state statutory and constitutional rights. Defendants acted with the specific intent, or with reckless disregard, to deprive Trevor Seever of his federal and state statutory and constitutional rights.

73.     As a direct and proximate result of these Defendants violation of Civil Code § 52.1, Trevor Seever suffered injuries and violations of his constitutional rights under the United States and California Constitution.

74.     Defendant City is vicariously liable for the wrongful acts of its employees and agents including Defendant Lamantia and Does 1-5 under California Government Code section 815.2(a).

75.     Plaintiffs bring this claim on behalf of Trevor Seever as his successors-in-interest, and seeks statutory damages and penalties, compensatory damages, and attorneys' fees under by California law, including Civil Code §§ 52 and 52.1.

76.     The conduct of Defendants Lamantia and Does 1-10 was willful, wanton, malicious, and done with conscious and reckless disregard for the rights and safety of Trevor Seever and warrants the imposition of punitive damages as against Lamantia and Does 1-20.

**SEVENTH CLAIM FOR RELIEF**
**Assault and Battery**
**(Plaintiffs as Successors in Interest to Trevor Seever**
**Against Defendants City, Lamantia and Does 1-5)**

77.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 76 of this first amended complaint.

78.     The actions and omissions of Defendant Lamantia and Does 1-5's as set forth above constituted assault and battery on Trevor Seever.

79.     Defendant City is vicariously liable for the wrongful acts of its employees and agents including Defendant Lamantia and Does 1-5 under California Government Code section 815.2(a).

80.     As a direct and proximate result of the assault and battery, Trevor Seever sustained injuries and died from his injuries and damages and Plaintiffs are entitled to relief as set forth above.

81.     The conduct of Defendants Lamantia and Does 1-5 was willful, wanton, malicious, and done with conscious and reckless disregard for the rights and safety of Trevor Seever and warrants the imposition of punitive damages as against Lamantia and Does 1-5.


**EIGHTTH CLAIM FOR RELIEF**
**Intention Infliction of Emotional Distress**
**(Plaintiff Darlene Ruiz**
**Against Defendants City, Lamantia and Does 1-5)**

82.     Plaintiff Darlene Ruiz repeat and re-allege each and every allegation in paragraphs 1 through 81 of this complaint.

83.     Defendant Lamantia, while working as an MPD officer acting within the course and scope of his duties, intentionally shot Ms. Ruiz' son, who died from his injuries. She was in the immediate neighborhood. Her husband heard the shooting, and they rushed to the scene. She saw her son, who was still alive, being loaded into the ambulance. She was assured by an MPD officer that her son was not "critical" and would be "ok." She was told that because of COVID protocols she

needed to go home and wait for word on his condition. She did so.

84.     Other MPD officers, including Does 1-5, were tasked with investigating, including gathering information from Ms. Ruiz, her husband and her daughter about what had transpired with Trevor earlier that day. MPD officers entered Ms. Ruiz' home without permission and began searching. They later spoke to Ms. Ruiz for almost an hour knowing that she was under the mistaken belief that her son had survived the shooting, was not in critical condition, and was being treated in the hospital. Ms. Ruiz felt assured by the officers speaking to her about the events because she believed, incorrectly, that the officers would have told her that her son was deceased from the bullet wounds.

85.     The officers deliberately chose not to tell Ms. Ruiz that her son was deceased, although they knew he had been pronounced dead about a half hour before the interview began, because they believed it to be to their advantage, and to the advantage of MPD, to search Ms. Ruiz' house, get her statements, and interview her husband and her daughter before telling her that her son had been killed by Lamantia.

86.     After the interview, Ms. Ruiz asked her questioner, Officer Martin, whether he had any updates from the hospital. Officer Martin responded, "He didn't make it." Ms. Ruiz reacted, "What?" After Officer Martin repeated the statement, Ms. Ruiz collapsed in grief, shrieking with emotional anguish aggravated by the false sense of security the officers had imparted by withholding that information, and then the sudden realization of her loss. Then, MPD officers falsely informed Ms. Ruiz that her son's remains were already at the coroner's office where, it turned out, she could not view them for 6 days. In fact, the remains were still at the hospital and she could have viewed her son at that time.

87.     The conduct of the involved MPD officers was extreme and outrageous, and beyond the bounds that any civilized society should tolerate. These actions were undertaken with the intent

to cause severe emotional distress, and with reckless disregard for their consequences on Ms. Ruiz'

emotions. She suffered extreme and severe emotional distress as a proximate result.

88.     The City and MPD are vicariously liable for the wrongful conduct of its officers

pursuant to section 815.2(a) of the California Government Code.

## JURY DEMAND

Plaintiffs hereby demand a jury trial in this action.

## PRAYER

WHEREFORE, Plaintiffs pray for relief, as follows:

1.     For compensatory damages, both general and special, and both past and future, according to proof;

2.     For punitive damages against Defendant Lamantia in an amount to be proven at trial;

3.     For statutory damages and penalties;

4.     For reasonable attorneys' fees under both federal and state fee shifting statutes, including 42 U.S.C. § 1988 and California Civil Code § 52.1;

5.     For costs of suit; and

6.     For such further other relief as the Court may deem just, proper, and appropriate.


Dated: January 13, 2022                    LAW OFFICES OF STEVEN A. FABBRO


                                                    /s/ Steven A. Fabbro
                                        By: _____
                                            STEVEN A. FABBRO
                                            Attorney for Plaintiff  DAVID ROBERT SEEVER,
                                            Individually and as Successor in Interest to
                                            TREVOR R. SEEVER

Dated: January 13, 2022

THE LAW OFFICES OF JOHN BURTON
FORES - MACKO - JOHNSTON, INC.
LAW OFFICES OF RONALD LA FORCE


By: /s/ John Burton
_____
JOHN BURTON
Attorney for Plaintiff  DARLENE RUIZ,
Individually and as Successor in Interest to
TREVOR R. SEEVER